Estate of William Stuart Spaulding, Deceased, Charles B. Barnes and John T. Spaulding, Surviving Executors v. Commissioner.
Estate of Spaulding v. Commissioner
Docket No. 109860.
United States Tax Court
1944 Tax Ct. Memo LEXIS 310; 3 T.C.M. (CCH) 294; T.C.M. (RIA) 44141; March 30, 1944
*310 Henry J. Richardson, Esq., 730 Transportation Bldg., Washington, D.C., for the petitioners. Melvin L. Sears, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioners challenge respondent's determination of a deficiency in estate tax of $100,469.24, and claim an overpayment of $18,684.36 in estate taxes and interest. The principal question is whether any part of the corpus of a certain trust is properly includible in the gross estate of petitioner's decedent by reason of Revenue Act of 1926, section 302(c) and (d), as amended. Findings of Fact The facts have been stipulated by the parties and we hereby find them accordingly. Petitioners, the executors of the Estate of William Stuart Spaulding of Beverly, Massachusetts, who died on August 15, 1937, filed their Federal estate tax return with the collector of internal revenue at Boston, Massachusetts. In so doing they used as a basis for the valuation of the assets of the estate the value on the optional date provided by section 302 (j) of the Revenue Act of 1926, as amended, and included therein the income received by them as executors between the date of decedent's death *311 and the previously mentioned optional date. They included in the estate no part of the value of the corpus of a certain trust to be described below. On November 26, 1920, an indenture of trust was executed by and between William A. Studley as party of the first part, and William S. Spaulding (decedent) and John T. Spaulding, as parties of the second part, trustees for the benefit of decedent's children. William A. Studley was decedent's confidential secretary and friend for many years. Studley contributed no money or other property of his own to the trust but was merely an accommodation party and "straw man" in order to avoid legal objections under the laws of Massachusetts. At the time of its creation decedent contributed to the trust various securities having a then market value of $807,179.50, and his wife, Katrina F. Spaulding, contributed other securities having a then market value of $577,066. On December 31, 1923 the trustees, exercising powers given them by the trust indenture (as hereinafter in part set forth), physically divided the property then held by them, including $165,080.77 income realized, accumulated, and added to corpus since creation of the trust, into three *312 separate trust funds, without dividing each specific security into equal thirds but by allocating securities and cash of equal value, one each for the benefit of Katrina S. Spaulding, William S. Spaulding, Jr., and Alice O. Spaulding, respectively, children of decedent. Since that date each of the three trust funds has been administered as an independent trust for the respective beneficiaries and separate trust accounts have been kept by the trustees. From January 1, 1924, to the date of decedent's death the trustee accumulated from income and added to the corpus of the trust for the benefit of of William S. Spaulding, Jr., the amount of $507,187.98. The properties held in the trust for the benefit of William S. Spaulding, Jr., at the date of decedent's death consisted of (1) one-third of all properties contributed to the original trust by decedent and his wife or substitutions therefor, (2) one-third of the income earned and accumulated by the original trust up to December 31, 1923, and (3) all the income accumulated by the separate fund for William S. Spaulding, Jr., between January 1, 1924, and decedent's death. The proportion in which decedent and his wife contributed to the *313 original trust was maintained in the segregation of December 31, 1923, and the property contributed by decedent at all times earned income and appreciated or depreciated in the same proportion as the property contributed by his wife. The two trustees appointed in the original indenture, decedent and his brother, served in that capacity at all times until the death of decedent when another trustee to succeed him was appointed. The decedent had only three children, Katrina S., Alice O., and William S. Spaulding, Jr. The last mentioned was born on August 9, 1914, and had not reached the age of 30 years at the date of decedent's death on August 15, 1937. The pertinent provisions of the trust indenture were as follows: "After deducting all necessary charges and expenses and a proper compensation for the care of the property to apply such part of the net income of the share of each child for her or his support and education until she or he shall have attained the age of twenty-five (25) years as said Trustees shall in their absolute discretion decide as best for the interest of such child, adding the remainder of said net income to her or his share of principal. As each child shall have *314 attained the age of twenty-five (25) years to pay the income of her or his share of said trust fund to her or him quarterly or oftener in the discretion of the Trustees for and during her or his life and upon her or his death to pay over one-half (1/2) part of her or his share of the principal of the trust fund to such persons and in such manner as she or he shall by will appoint, and the other one-half (1/2) and in default of such appointment the whole, to her or his issue by right of representation, and if she or he shall leave no issue surviving then such other one-half (1/2) part and in default of appointment the whole, to such persons as would be entitled to receive her or his property under the laws of the Commonwealth of Massachusetts had she or her then died intestate and a resident thereof, in manner and proportion as provided by said laws. "Provided, however, that not withstanding [sic] the foregoing provisions the Trustees are authorized at any time after each son of said William S. Spaulding and Katrina F. Spaulding, his wife, shall have attained the age of thirty (30) years to pay over to him from time to time or at one time such part not exceeding in the aggregate one-half *315 (1/2) of the principal of his share of the trust fund as the Trustees shall decide as best for his interests, reducing the payments of income to him thereafter and the distribution of his share of the principal accordingly, the decision of the trustees as to what shall be a proportionate reduction to be final and binding upon all persons. "No part of the income payable to any beneficiary hereunder shall be paid by way of anticipation or be assignable either voluntarily or by operation of law, or attachable or trusteeable by the creditors of the beneficiary, or be liable to be come at or reached or applied to the payment of any claim against her or him. "If the Trustees for the time being shall at any time or from time to time in their judgment deem it expedient and for the best interest of any beneficiary to whom any income is payable by them under the foregoing provisions to withhold such income or any part thereof from such beneficiary who but for such withholding would have been entitled to receive the same, then it shall be lawful for them to withhold such income, or any part thereof, but such part of the income so withheld as shall be necessary or proper therefor in the judgment *316 of the trustees for the time being may be applied to the personal support of the beneficiary from whom the same is withheld, or, if the trustees think it best to the support of such beneficiary's from whom the same is withheld, or, if the trustees think it best to the support of such beneficiary's family, or any of them, in either case so long as the Trustees shall deem wise, and in such way and manner from time to time and in such amounts from time to time as the Trustees shall deem most conducive to such beneficiary's or such beneficiary's family's happiness and comfort; and such part of the income so withheld as shall not be so applied shall be added to and form part of the principal of the share of the beneficiary from whom it is so withheld. "The Trustees may in their discretion hold property hereunder as separate funds or as one trust fund distributing the income, however, to the beneficiaries in the proper proportions. "The Trustees are empowered whenever any division is to be made of the trust property for the purpose of distribution or otherwise, to appraise, divide and set apart and ascertain the same in such manner and in such property, real or personal or both, as they *317 shall determine without a formal appraisal or sale thereof and their determinations made in good faith shall be conclusive upon all parties interested. "The Trustees shall have full power to continue, change and make investments from time to time, including power to invest what was real estate in personal or the reverse, and full power to mortgage or sell at any time or times any property, real or personal, belonging to the trust fund at public or private sale, for such consideration and upon such terms as they deem expedient, and to make, execute, and deliver all necessary instruments therefor. Also full power to decide without any hearing or consultation with the beneficiaries as to what is capital and what is income, and whether to charge brokers' commissions and the like to capital or income, and as to whether all of the income of wasting securities or securities bought at a premium should be distributed, and as to all such questions. "It is the intention of the parties hereto that said trustees shall in the management of said property have all the powers and control which an absolute owner in his own right would have, and that they shall not be limited in their investments *318 to securities provided by law for investment by trustees but shall be guided by their own best judgment therein. "And the said parties of the second part hereby accept said trust it being understood, however, that they [sic] said trustees and any trustees appointed hereunder shall be liable each for his own wilful default only and not for accident, mischance, error of judgment in making or retaining investments or otherwise and it being also understood that any trustee hereunder may at any time resign said trust. "The number of trustees shall not be less than two but in case of the absence or temporary incapacity of either the other shall have full power to act during such absence or incapacity. In every case of the death, resignation or incapacity of any trustee hereunder a successor shall be appointed by the appointment in writing by the remaining trustee and such successor shall upon said appointment be vested with all the powers and be subject to all the duties of trustee hereunder and so from time to time as often as any vacancy shall occur. * * *" On November 15, 1938, petitioners filed an estate tax return in which they erroneously included, as part of the estate, income *319 received between the date of death and the optional valuation date there elected. At the same time petitioners paid to the collector of internal revenue the sum of $278,734.87, the tax shown thereon, and on February 1, 1940, paid the further sum of $866.75 with interest of $63.09 pursuant to an additional assessment. On June 30, 1940, petitioners filed a claim for refund in the amount of $17,754.52 based on that erroneous inclusion. Respondent concedes the validity of that claim but has not paid it because of the deficiency herein determined. There is an overpayment of estate tax in the amount of $17,754.52. The transfer in trust was not made in contemplation of death. Respondent concedes that no more than that portion of the value of the trust for the benefit of William S. Spaulding. Jr., attributable to the contribution of decedent is includible in his gross estate. Petitioners contend that no part thereof is so includible. Opinion Decedent's power to distribute corpus to the trust beneficiary upon the future contingency that the latter attain the age of 30 years was at most "a contingent power to alter, amend or revoke" not covered by the provisions of section 302(d). , *320 affirmed on the opinion below (C.C.A., 2nd Cir.), . Following the principle of , which has now been affirmed sub nom. , it must further be concluded that the authority reserved to decedent during his life to designate among specified beneficiaries the recipient of the trust income likewise fell short of a power of alteration, and that it was inadequate to characterize the transfer, which took place prior to 1931, as one intended to take effect at death under section 302(c). It may be added that unlike , and , this decedent did not reserve to himself any part of the trust income. Even the retained power to designate income beneficiaries was very much narrower than that in the Bradley case. These facts are accordingly more favorable to petitioners than those in the cases cited and require that respondent's determination be disapproved. Decision *321 will be entered for petitioners.